UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADVANCED OXYGEN THERAPY INC.,

                Plaintiff,

– against –

ORTHOSERVE INC., ANGELA BABAKHANOV, DANIL BABAKHANOV, and JONATHAN BABAKHANOV,

                Defendants.

**OPINION & ORDER**

21 Civ. 2089 (ER)

Ramos, D.J.:

Advanced Oxygen Therapy, Inc. brought this action against Orthoserve, Inc., Angela Babakhanov, Danil Babakhanov, and Jonathan Babakhanov (collectively, "Defendants"), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, and unjust enrichment. Defendants now move to dismiss all but the claim for breach of contract. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

### a. Factual Background

Advanced Oxygen is a medical device and technology company which provides in-home treatments of its patented Topical Wound Oxygen ("TWO$_2$") therapy to patients suffering from severe and chronic wounds such as burn wounds and pressure ulcers. Doc. 1 ¶ 20-21. Advanced Oxygen is incorporated in Nevada, with its principal place of business in California. *Id.* ¶ 10. In August 2017, Advanced Oxygen opened a New York City office to support its growth in the region. *Id.* ¶ 23. At the time, Advanced Oxygen had not yet received the necessary regulatory authorization to provide its services and sell its durable medical equipment ("DME") directly to

patients in New York, so it contracted with Orthoserve to act as an intermediary. *Id*. ¶¶ 3, 24. Orthoserve is an authorized New York DME supplier, and is incorporated in New York, with its principal place of business in the Bronx, New York. *Id*. ¶¶ 3, 11. Danil Babakhanov is the president of Orthoserve, Angela Babakhanov is the general manager of Orthoserve, and Jonathan Babakhanov is an Orthoserve executive. *Id*. ¶¶ 12-14.

In approximately September 2017, Advanced Oxygen and Orthoserve entered into a contract whereby they agreed that Orthoserve would purchase and re-sell Advanced Oxygen's products and services to New York Medicaid Managed Care customers and insurers. *Id*. ¶ 25-26. Orthoserve was to act as an intermediary and coordinate with the Medicaid Managed Care insurers through billing intermediary Integra Partners to process insurance claims and collect payments. *Id*. ¶ 28. Orthoserve would receive the insurance claim payments, retain 15% of such payments, and forward the remaining 85% to Advanced Oxygen on a weekly basis. *Id.* ¶ 25-26. The contract also provided that in instances where the insurance companies would pay Orthoserve amounts that exceeded the contract rates, the insurers would correct this by recouping from Orthoserve the full amount already paid and then repaying the correct amount. *Id*. ¶ 29. Orthoserve would wait to pay the 85% owed to Advanced Oxygen until after this recoupment and reconciliation process was completed by the insurers. *Id*. ¶ 31.

On October 24, 2018, Jonathan Babakhanov emailed Advanced Oxygen's director of operations for New York, and notified him that they would be holding $250,000 of fully reconciled claim payments owed to Advanced Oxygen in escrow in order to protect the company in the event of future recoupments. *Id*. ¶ 32-33. Angela Babakhanov consented to the email being sent and was copied on the email. *Id*. ¶ 33. Following a phone conversation between Advanced Oxygen's chief executive officer and Jonathan and Angela Babakhanov, the CEO

emailed Angela and Jonathan on November 5, 2018 to memorialize their escrow agreement. *Id*. ¶ 34. The agreement detailed that Orthoserve would hold back payments to Advanced Oxygen in order to build up a temporary escrow of $250,000, the purpose of which was to mitigate potential risk to Orthoserve related to overpaid claims. *Id*. Per the agreement, once the $250,000 was established, Orthoserve would return to making all further claim payments to Advanced Oxygen weekly as established by the parties' prior agreement. *Id*. The agreement made explicit that it was "not the intention of Orthoserve to retain any funds, or delay paying any monies" due to Advanced Oxygen once the overpayments were reconciled by the insurer. *Id*. Pursuant to the escrow agreement, Defendants established a $250,000 escrow by withholding the following payments due to Advanced Oxygen from insurer Healthfirst:

    a. Payment due the week of October 8, 2018, totaling $53,570.40.

    b. Payment due the week of October 15, 2018, totaling $36,427.88.

    c. Payment due the week of October 22, 2018, totaling $50,460.56.

    d. Payment due the week of October 29, 2018, totaling $26,788.91.

    e. Payment due the week of November 5, 2018, totaling $64,371.42.

    f. Payment due the week of November 13, 2018, totaling $13,781.83.

    g. Payment due the week of November 19, 2018, totaling $4,599.00.

*Id*. ¶ 35. As of September 22, 2020, all of the claims that produced the payments making up the $250,000 escrow have been fully reconciled by the insurance company and are therefore owed to Advanced Oxygen per the parties' agreements. *Id*. ¶ 37-38. Advanced Oxygen alleges that Orthoserve has refused to deliver these payments, as well as fully reconciled amounts from additional Healthfirst insurance claims dating back to 2017 and 2018, totaling an additional $360,073.90. *Id*. ¶ 39-40. In approximately September and October 2020, Advanced Oxygen

repeatedly sent the United Parcel Service to Orthoserve to collect these additional payments and Orthoserve failed to make the payments. *Id*. ¶ 42. Advanced Oxygen further alleges that Orthoserve is withholding its portion of claim payments from other insurers, including but not limited to Fidelis Care and WellCare, and Orthoserve has refused to say whether these claims have been reconciled and are therefore due to Advanced Oxygen, constituting a breach of the parties' original agreement. *Id*. ¶¶44-46. Advanced Oxygen seeks damages "in no event less than $610,073.90, plus prejudgment and post-judgment interest." *Id*. at 13.

### b. Procedural Background

On March 10, 2021, Advanced Oxygen filed the instant complaint, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment against Orthoserve, and asserting claims for breach of fiduciary duty and conversion against all defendants. Doc. 1. On May 26, 2021, Defendants moved to dismiss all claims asserted by Advanced Oxygen, save for the breach of contract claim. Doc. 26.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (quotation marks and citation

omitted), and "a complaint…does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of a plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements of documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citations omitted).

### III. ANALYSIS

#### A. Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Under New York law, the duty of good faith and fair dealing "is implied in every contract, to the effect that neither party 'shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *CCR Int'l, Inc. v. Elias Grp., LLC*, No. 15 Civ. 6563 (PAE), 2021 WL 1253892, at *4 (S.D.N.Y. Apr. 5, 2021) (citing

*Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006)).  There is a presumption that all parties act in good faith, so the burden of proving a breach of the covenant rests with the party asserting the absence of good faith.  *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007) (citing 23 WILLISTON ON CONTRACTS § 63:22 (4th ed. 2006)).  Under New York law, claims for breach of the implied covenant of good faith and fair dealing are duplicative of breach of contract claims "when both 'arise from the same facts and seek the identical damages for each alleged breach.'"  *Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (quoting *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 894 N.Y.S.2d 47, 49-50 (N.Y. App. Div. 2010)).  However, a claim for breach of the implied covenant of good faith and fair dealing is not duplicative when the claim "depends on facts in addition to those that might support a breach of contract claim." *Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 2667 (LMM), 2007 WL 2454109, at *3 (S.D.N.Y. Aug. 20, 2007).

In this case, Advanced Oxygen has not shown that their claim for breach of the covenant of good faith and fair dealing depends on facts beyond those that might support their breach of contract claim.  They allege that Orthoserve breached both the implied covenant and the underlying contract by wrongfully retaining payments owed to Advanced Oxygen and by failing to inform Advanced Oxygen as to whether additional claim payments from other insurers are fully reconciled and paid.  Doc. 29 at 19.

Further, Advanced Oxygen may not plead breach of the covenant as an alternative theory of liability based on the possibility of dispute as to the existence or enforceability of the underlying contract because "breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale Del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992)

(quoting *Geler v. Nat'l Westminster Bank USA*, 770 F. Supp. 210, 215 (S.D.N.Y. 1991)).  The extent of the obligation is based on the agreement between the parties, such that no duty of good faith and fair dealing exists absent such an agreement.  *Id*. (citing N.Y. U.C.C. Official Comment 1 (McKinney 1991)).  Because there is no factual difference between these two claims, the claim for breach of the implied covenant of good faith and fair dealing is duplicative.  Defendants' motion to dismiss is accordingly GRANTED as to the claim for breach of the implied covenant of good faith and fair dealing.

### B. Claim for Unjust Enrichment

Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, the plaintiff must establish "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff."  *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001) (citing *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 79 (2d Cir. 1986)).

An unjust enrichment claim is precluded if a valid contract covers the subject matter of the dispute.  *First Hill Partners, LLC v. Bluecrest Cap. Mgmt.*, 52 F. Supp. 3d 625, 634 (S.D.N.Y. 2014).  However, when "plaintiff's unjust enrichment claim is derived from the same set of facts as plaintiffs' breach of contract claim, plaintiffs may plead alternative theories of liability," so long as the existence or enforceability of the underlying contract is in dispute.  *See Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 580 (E.D.N.Y. 2014); *see also ESI, Inc. v. Coastal Power Prod. Co.*, 995 F.Supp. 419, 436 (S.D.N.Y. 1998) (denying motion to dismiss an unjust enrichment claim where the defendant contested the validity and enforceability of the contract).  Here, Defendants have not explicitly indicated that they will not contest the validity

and enforceability of the agreement underlying the breach of contract claim, and therefore Advanced Oxygen is permitted to plead the alternative theory of liability of unjust enrichment. Thus, the motion to dismiss is DENIED as to the claim for unjust enrichment.

### C. Claim for Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty under New York law, "a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 787 (S.D.N.Y. 2011) (citing *Kurtzman v. Bergstol*, 835 N.Y.S.2d 644, 646 (2d Dep't 2007)). The elements of a fiduciary relationship under New York law are: "(1) the vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself." *Esbin & Alter, LLP v. Zappier*, No. 08 Civ. 0313 (SCR) (GAY), 2009 WL 10696347, at *3 (S.D.N.Y. Apr. 3, 2009), *report and recommendation approved*, No. 08 Civ. 0313 (RWS), 2009 WL 10696348 (S.D.N.Y. Sept. 29, 2009). Advanced Oxygen alleges that the escrow agreement between the parties gives rise to a fiduciary relationship, but that even in the absence of a valid escrow agreement, the nature of the relationship between the parties creates Defendants' fiduciary obligations to Advanced Oxygen.

"[A]n escrow agreement creates a fiduciary relationship between the escrow agent and the parties to the escrow transaction." *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 728 (S.D.N.Y. 2014) (citing *Greenapple v. Capital One, N.A.*, 939 N.Y.S.2d 351, 352 (1st Dep't 2012)). In New York, an escrow agreement requires "(a) an agreement as to the subject matter and delivery of the same; (b) a third-party depositary; (c) delivery of the subject matter to a third party conditioned upon the performance of some act or the happening of the event; and

(d) relinquishment by the promisor." *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002) (quoting *Nat'l Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn*, 634 N.Y.S.2d 609, 614 (Sup. New York County 1994)). Advanced Oxygen adequately pleads the existence of an agreement, negotiated by phone and memorialized by email, as to the escrowed funds. Doc. 1 ¶ 32-35. The delivery of the escrowed funds was conditioned upon the happening of an event, namely the completion of the recoupment and reconciliation process by insurance companies. *Id*. ¶ 33-34. Orthoserve's primary arguments against the existence of a valid escrow agreement are that Advanced Oxygen was not the party required to relinquish control over the funds, and that the funds were not deposited with a third-party but rather with Orthoserve itself. Doc. 31 at 2-3. These arguments are unavailing because the $250,000 held in escrow is made up of fully reconciled claim payments that were due to Advanced Oxygen, so Advanced Oxygen did need to relinquish control in order to allow Orthoserve to create the escrow fund. Doc. 1 ¶ 35. As to the issue of the third-party depositary, courts in this district have found that plaintiffs plausibly alleged the existence of a valid escrow agreement where an escrow account was controlled by a corporate entity with which the plaintiff was doing business and its principal. *See, e.g.*, *Dover Ltd. v. Assemi*, No. 08 Civ. 1337 (LTS) (JCF), 2009 WL 2870645 (S.D.N.Y. Aug. 5, 2009) (finding plaintiff stated a claim for breach of fiduciary duty where the defendants managed an escrow account under their control); *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 787 (S.D.N.Y. 2011) (finding the allegations sufficient to allow the inference that the elements of an escrow agreement under New York law are met where the escrowed funds were held by the corporate defendant and its principal). In this case, the escrowed funds were controlled by Orthoserve, a corporate entity with which Advanced Oxygen was doing business, and its

principal.  Thus, since there is a valid escrow agreement, a fiduciary relationship was created between the parties.

While Advanced Oxygen has adequately pled the existence of an escrow agreement between the parties, the nature of the parties' relationship also gives rise to fiduciary duties.  "[A] fiduciary relationship embraces not only those the law has long adopted -- such as trustee and beneficiary -- but also more informal relationships where it can be readily seen that one party reasonably trusted another."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150-51 (2d Cir. 1993).  New York courts "generally avoid dismissing a claim of breach of fiduciary duty…because it usually involves a question of fact:  whether someone reposed trust and confidence in another who thereby gains a resulting superiority or influence."  *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 26 (S.D.N.Y. 2009), *aff'd*, 382 F. App'x 107 (2d Cir. 2010).

Advanced Oxygen has sufficiently pled each element of a fiduciary relationship.  First, Advanced Oxygen was vulnerable to Orthoserve by virtue of Advanced Oxygen's lack of regulatory approval, their need to work with Orthoserve to serve patients in New York, and by virtue of their business agreement through which Orthoserve had reconciled insurance payments owed to Advanced Oxygen in its possession.  *See* Doc. 1.  Orthoserve solicited empowerment when it requested to hold $250,000 of reconciled claim payments in escrow.  *Id*. ¶ 62.  Orthoserve did not provide Advanced Oxygen with information as to "the particulars of the escrow account" and refused Advanced Oxygen's requests to have the escrowed funds returned, preventing Advanced Oxygen from effectively protecting itself.  Doc. 29 at 12-13; *see also* Doc. 1 ¶ 64-68.

As to the other elements of breach of fiduciary duty, the Court finds that Advanced Oxygen has alleged sufficient misconduct by the defendant, and damages that were directly caused by the defendant's misconduct. Orthoserve has refused Advanced Oxygen's requests for return of the escrowed funds, and has refused to pay amounts from other insurance claims. Doc. 1 ¶¶ 40-46. This alleged misconduct by Defendants directly resulted in damages "in no event less than $610,073.90." *Id*. at 13. Accordingly, Advanced Oxygen has plausibly stated a claim for breach of fiduciary duty against Defendants, and Defendants' motion to dismiss is DENIED as to that claim.

### D. Claim for Conversion

Under New York law, "conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Grgurev v. Licul*, 229 F. Supp. 3d 267, 285 (S.D.N.Y. 2017) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (2006)). The elements of a claim for conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights. *Colavito*, 860 N.E.2d at 717 (internal citations omitted). New York recognizes that money may be the subject of a conversion action. *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 147–48 (S.D.N.Y. 2000). However where, as here, the property is money, the money must be held in a "specific, identifiable fund and [subject to] an obligation to return or otherwise treat in a particular manner the specific fund in question." *Id*. (quoting *High View Fund, L.P. v. Hall*, 27 F.Supp.2d 420, 429 (S.D.N.Y.1998)). It is clear that these elements are properly pled. First, Advanced Oxygen has pled that the $250,000 escrow fund is comprised of fully reconciled claim payments owed to Advanced Oxygen. Doc. 1 ¶ 62. Thus, Advanced

11

Oxygen has shown a possessory right or interest in the property.  Next, Advanced Oxygen has pled that they have "demanded the return" of the money in the escrow fund and that Defendants "have persisted in their unauthorized possession" of the money.  *Id.* ¶ 67.  Finally, the money is held in a specific, identifiable fund, and per the escrow agreement between the parties, is subject to an obligation to be returned to Advanced Oxygen.  *Id.* ¶ 34.  Thus, Advanced Oxygen has shown that Defendants have asserted their dominion over the money, in derogation of Advanced Oxygen's rights.

However, a claim for conversion cannot be sustained where the underlying facts are not sufficiently distinguishable from a breach of contract claim.  *See, e.g.*, *Best W. Int'l, Inc. v. CSI Int'l Corp.*, No. 94 Civ. 0360 (LMM), 1994 WL 465905, at *7 (S.D.N.Y. Aug. 23, 1994) (dismissing claim for conversion where the conversion injury complained of is identical to the damages asserted in connection with the alleged breach of contract and the underlying facts are not sufficiently distinguishable from its breach of contract claim to support a claim for conversion).  "[I]t is settled under New York law that a tort claim will not arise 'where plaintiff is essentially seeking enforcement of the bargain.'"  *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir. 1993) (citing *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 552, 583 N.Y.S.2d 957, 961, 593 N.E.2d 1365 (1992)).  A plaintiff must show "acts that were unlawful or wrongful as opposed to mere violations of contractual rights."  *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004).  Advanced Oxygen has failed to show wrongful acts beyond those which underlie the claim for breach of contract.  Accordingly, the motion to dismiss is GRANTED as to the claim for conversion.

**IV.   CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is GRANTED as to the claims for conversion and breach of the implied covenant of good faith and fair dealing and DENIED as to the claims for unjust enrichment and breach of fiduciary duty.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 26.

It is SO ORDERED.

Dated: November 17, 2021
      New York, New York

                                              EDGARDO RAMOS, U.S.D.J.